UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES W.

                    Plaintiff,

   -v-

KILOLO KIJAKAZI
Commissioner of Social Security,

                    Defendant.
_____

1:20-CV-01298-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15).

Plaintiff Charles W.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied and the Commissioner's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, Plaintiff is identified solely by first name and last initial.

## BACKGROUND[2]

Plaintiff protectively filed an application for DIB on May 29, 2015 alleging disability since January 1, 2012 due to arthritis, back problems, bilateral shoulder problems, damaged vertebrae in lower and upper back, surgery for bilateral carpal tunnel syndrome, right hand and finger problems, and right full hip replacement. (*See* Tr. 122-128; 273-279).[3] Plaintiff's DIB application was initially denied on July 24, 2015. (Tr. 126; 128). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Mary Mattimore on November 28, 2017, where Plaintiff testified and appeared with counsel. (Tr. 66-121). Vocational expert Michael Cline also testified at the hearing. (*Id*.). On January 29, 2018, ALJ Mattimore issued a decision that Plaintiff was not disabled under the Act. (Tr. 129-42). Plaintiff sought review of that decision by the Appeals Council, which the Appeals Council granted on January 9, 2019, thereby vacating the prior decision and remanding back to ALJ Mattimore. (Tr. 143-147).

A second hearing was held before ALJ Mattimore on September 10, 2019, where plaintiff appeared with counsel. (Tr. 34-63). ALJ Mattimore heard testimony from plaintiff, as well as from Coleman Cosgrove, a vocational expert ("VE"), and Peter M. Schosheim, M.D., a medical expert ("ME"). (*Id*.). On October 16, 2019, ALJ Mattimore found again that Plaintiff was not disabled under the Act. (Tr. 12-32). Plaintiff sought review of that decision by the Appeals Council and his request was denied. (Tr. 1-6). Plaintiff then filed the instant lawsuit. [4]

---

[2] The Court presumes the parties' familiarity with the Plaintiff's medical history, which is summarized in the moving papers.

[3] References to "Tr." are to the administrative record in this case.

[4] Despite the ALJ's determination that Plaintiff has alleged a disability since January 1, 2012, plaintiff's brief supporting his motion for judgment on the pleadings states that he alleged a disability onset date of

Born on October 18, 1950, Plaintiff was 61 years old on the alleged disability onset date and 68 years old on the date of the September 10, 2019 hearing. (Tr. 128). Plaintiff is able to communicate in English, has an 11th grade education, and previously worked as an office manager, construction worker, lumber laborer, planning operator, lumber stacker, and lumber supervisor. (Tr. 25-26; 74).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

August 5, 2005. (Dkt. No. 11-1, pg. 2). This date is based on Plaintiff's counsel's prior amendment of the alleged onset date to August 5, 2005 during the first administrative hearing held on November 28, 2017. (Tr. 68-70). The ALJ's first decision, dated January 29, 2018, found that Plaintiff had not been disabled from August 5, 2005 through March 31, 2012, Plaintiff's last date insured. (Tr. 132). However, after the Appeals Council remanded the matter for further hearing, the onset of Plaintiff's alleged disability was treated as having occurred on January 1, 2012 and Plaintiff failed to object or seek amendment of that date. (Tr. 39). The later alleged onset date was reflected in hearing notices issued by the Appeals Council (Tr. 253; 257) and noted repeatedly during the second hearing held on September 10, 2019 (Tr. 39; 41; 42). Regardless, the ALJ considered the entirety of the medical record before concluding that Plaintiff was not disabled during the relevant period of January 1, 2012 to March 31, 2012. (Tr. 12-27).

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

    II.    <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date of January 1, 2012 through his date last insured of March 31, 2012. (Tr. 18). At step two, the ALJ found that plaintiff had the following severe impairments: (1) osteoarthritis of the bilateral shoulders; (2) cervical spine degenerative disc disease; (3) status-post total right hip replacement from 2011; and (4) degenerative disc disease of the lumbar spine. (*Id*.). At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19). Before proceeding to step four, the ALJ assessed that Plaintiff had the following RFC:

> [T]he [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The [Plaintiff] can stand and/or walk for 6 out of 8 hours and sit for 6 out of 8 hours with normal breaks. The [Plaintiff] can never climb ladders, ropes, scaffolds but can frequently climb ramps, stairs, kneel, crouch. The [Plaintiff] can occasionally crawl and frequently stoop. The [Plaintiff] can occasionally reach overhead bilaterally. The [Plaintiff] can frequently reach in all other directions bilaterally. The [Plaintiff] must avoid concentrated heavy vibrations, avoid all exposure to hazardous machinery, as well as no concentrated exposure to hazardous heights.

(Tr. 20).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Cosgrove to conclude that through the date last insured Plaintiff was capable of performing past relevant work as an office manager as it was actually performed and that this work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. 25). Accordingly, the ALJ found

that Plaintiff had not been under a disability within the meaning of the Act from January 1, 2012 through March 31, 2012. (Tr. 27).

    IV.    <u>*Plaintiff's Challenges*</u>

Plaintiff argues first that the ALJ improperly evaluated the medical opinion evidence, resulting in an RFC finding that was not supported by substantial evidence. (Dkt. No. 11-1, pgs. 13-19). Second, Plaintiff argues that the ALJ erred in finding that Plaintiff was capable of past relevant work. (*Id*., pgs. 19-26). The Court will discuss each argument in turn.

    1.    <u>*Medical Evidence was Properly Evaluated*</u>

In deciding a disability claim, the ALJ must "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citing 20 C.F.R. § 404.1527(d)). Although an ALJ's conclusions may not "perfectly correspond" with any of the opinions of medical sources cited in his decision, he is entitled to weigh all of the evidence available to make findings that are consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (citing *Perales*, 402 U.S. at 399) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, he cannot simply selectively choose evidence in the record that supports his conclusions. *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (internal citations and quotations omitted).

Here, the ALJ assessed an RFC of light work with additional postural limitations, including restrictions on climbing, crawling, and stooping.[5] The ALJ also found that Plaintiff was limited to occasional reaching overhead and frequent reaching in all other directions. In reaching her RFC assessment, the ALJ acknowledged Plaintiff's statements about pain and symptoms from back, hip, neck, and shoulder conditions which he stated limited his ability to work. However, based on the entire record, the ALJ concluded that the evidence did not support Plaintiff's allegations about the limiting effects of his symptoms.

In significant part, the ALJ relied on the opinion of medical expert Dr. Schosheim. Dr. Schosheim reviewed Plaintiff's medical record and gave testimony at the hearing in which he opined that Plaintiff was capable of work consistent with the RFC assessment. (Tr. 21; 24). Dr. Schosheim testified about Plaintiff's musculoskeletal problems, including his right hip replacement, his mild loss of motion in both shoulders due to arthritis, and degenerative disc disease in his spine. (*Id.*). Despite these impairments, Dr. Schosheim's found that Plaintiff remained active during the relevant period, including cutting trees and cross-country skiing. (*Id.*). The ALJ found Dr. Schosheim's opinion highly persuasive because it gave specific examples and was supported by the objective medical evidence, including clinical findings upon examination. (*Id.*). The ALJ also gave "great" weight to the 1999 opinion of Dr. Weiss, an independent medical examiner, to the effect that Plaintiff

---

[5] "Light work" is defined by the Regulations as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, a job falls into this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id*. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. *Id*. If someone can do light work, the Commissioner will determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Id*.

9

had no restrictions from a thumb condition; "great" weight to treating source Dr. Kelly's 1999 opinion of no restrictions following carpal tunnel surgery; and "some" weight to treating source Dr. Rachala's 2011 opinion regarding post-hip replacement surgery impairments. (Tr. 24-25). The ALJ explicitly provided reasoning for her evaluation and weighing of each opinion as required under 20 C.F.R. § 404.1527(c).[6]

Plaintiff argues that reliance on Dr. Schosheim's opinion was flawed because he did not examine or treat Plaintiff. The Court rejects this argument, as a medical source's relationship to a claimant only encompasses two of six relevant factors used to evaluate a source's opinion. *See* 20 C.F.R. § 404.1527(c). Further, the Second Circuit has held that a non-examining source's opinion can override a treating source opinion when it is supported by substantial evidence in the record. *Diaz v. Shalala*, 59 F.3d 307, 315 n.5 (2d Cir. 1996). Generally, the Commissioner applies a "treating physician" rule of deference to the views of a physician engaged in primary treatment of the claimant, so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128-129 (2d Cir. 2008) (citations omitted). Here, however, there is no contrary treating source opinion and the consistency and supportability of Dr. Schosheim's opinion with the record as a whole demonstrates that the ALJ was reasonable in affording his opinion significant weight.

---

[6] For claims filed prior to March 27, 2017, such as this one, the ALJ must consider the following factors when evaluating medical evidence: the nature of the relationship, the length and frequency of the relationship, the relevant evidence to support the opinion, the consistency of the opinion with the record as a whole, whether the physician in a specialist in the area of particular medical issues, and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff further argues that the ALJ should not have relied on the opinions of Drs. Weiss and Kelly, each rendered in 1999, opining that Plaintiff's carpal tunnel syndrome caused no functional restrictions. (Tr. 24). It is true that the time between the date of these opinions and the relevant period is lengthy, lessening their import. *See generally Carney v. Berryhill*, 16-CV-269, 2017 U.S. Dist. LEXIS 72784, at *15 (W.D.N.Y. May 12, 2017) ("[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."). However, here, the ALJ relied on the opinions only in the absence of any later evidence indicating that Plaintiff had manipulative limitations from the carpal tunnel syndrome. Indeed, Plaintiff does not point to any evidence apart from his own testimony about pain to the dispute these opinions. Plaintiff also argues that the ALJ erred in discounting the April 2011 opinion of Dr. Rachala which stated that Plaintiff would be on "strict hip precautions" for three months after surgery. (Tr. 24-25; 526). What Plaintiff ignores is the ALJ's express explanation that the weight of this opinion was lessened because it was rendered based on "acute visits during the course of treatment and not an accurate depiction of the [plaintiff's] overall functional abilities." (Tr. 24). The ALJ considered later evidence regarding Plaintiff's post-surgery recovery and functioning that demonstrated his ability to engage in work described by the RFC. Thus, the Court finds no error in the ALJ's evaluation of each of these source opinions.

In addition to the opinion evidence, the ALJ relied on and referred to medical records showing the history and status of Plaintiff's medical conditions during the relevant period. She found that Plaintiff's claims of a disabling right hip impairment were not supported by the record. The ALJ cited to medical records from 2010 indicating that

Plaintiff walked with a mildly antalgic gait but had good velocity and coordination. (Tr. 22). At that time, Plaintiff described himself as "extremely active," both recreationally and in doing a "heavy intensive labor job." (*Id.*). Following Plaintiff's total right hip replacement in June 2011, the records showed that he did very well. (Tr. 23). According to his treating orthopedic physician Dr. Phillips, Plaintiff had "excellent range of motion, full strength, with good pulses in the lower extremities with diminished mobility in the right hip due to pain." (*Id.*). Despite having pain after climbing over stadium seats at a Buffalo Bills game in October 2011, records show that Plaintiff had a good recovery by 2012. (*Id.*). He reported feeling comfortable to return to work activity and having only mild discomfort on his left hip occasionally. He reported an exacerbation of symptoms only when engaged in intense physical activity such as walking uphill 7-8 miles or riding a bicycle 40 miles. (*Id.*). Clinical findings showed equal strength in extremities, no tenderness, no edema, nor any neurological deficits. (*Id.*).

The RFC includes additional postural and reaching limitations based on evidence of osteoarthritis in Plaintiff's bilateral shoulders and degenerative disc disease in plaintiff's cervical and lumbar spinal areas. (Tr. 22). The ALJ referred to treatment records showing that despite a spinal injury, Plaintiff was not in acute distress, had an unrestricted straight leg raise, and reported improvement after physical therapy. (*Id.*). The degenerative spinal changes were treated with nerve root block and steroid injections, and Plaintiff reported his symptoms were moderately alleviated by pain medication. (*Id.*). The ALJ further explained that despite Plaintiff's shoulder condition, examination records from 2010 through 2013 showed that he had near full rotator cuff strength and was neurovascularly intact. (*Id.*) Plaintiff was cautioned against "overzealous overhead lifting" by treating

physician Dr. Fineberg. Indeed, records from 2014 indicated that plaintiff experienced extreme shoulder pain with exercising and activities such as chopping firewood, hunting, and using a chainsaw overhead. (*Id*.).

Despite plaintiff's claims to the contrary, this Court sees no evidence that the ALJ selectively read or "cherry-picked" evidence to support her weighing of the opinion evidence or reading of the record. The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts. *See Richardson*, 402 U.S. at 399; *see also Veino,* 312 F.3d at 588 (ALJ is free to resolve conflicts of evidence and to credit only portions of a medical opinion which were supported by relevant evidence.) The record here, like most, contained conflicting evidence, but the ALJ properly carried out her duty to resolve those conflicts. Even though she could have done so differently, the ALJ's failure to interpret the evidence in the way Plaintiff prefers does not warrant remand. The ALJ reviewed the record as described above and reconciled the conflicting evidence. As the Commissioner points out, Plaintiff supports his argument by citing to portions of the record that show he suffered persistent back and extremity pain aggravated by activity. However, Plaintiff fails to explain the repeated objective examination findings showing mild or no limitations and minimal pain. Plaintiff's own subjective complaints of pain are insufficient to sustain his disability claim when objective medical evidence conflicts with those complaints. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ may reject plaintiff's subjective allegations of pain in light of inconsistent objective medical evidence and evidence of functional ability); *see also Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (citations omitted) (noting that although the Second Circuit has held that "the subjective element of pain is an important

factor to be considered in determining disability," the ALJ has the "discretion to evaluate the credibility of a claimant and arrive at an independent judgment, light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.). The record shows that Plaintiff was engaged in heavy physical activity during the relevant period, reporting pain only during the most strenuous of activities, i.e., walking, skiing, and cycling long distances, climbing, chopping wood, and hunting. Even after hip replacement surgery and the onset of shoulder pain, Plaintiff remained engaged in significant and heavy activity that was inconsistent with his claims of disability.

In sum, the opinion evidence and the medical record as a whole are consistent with the RFC determination of light work with additional restrictions. The ALJ discussed the evidence supporting the RFC at length and built a "logical bridge" between that evidence and her findings which allows for meaningful judicial review. *See Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019) (internal citations omitted) ("[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."). For these reasons, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

### 2. No Error in Step Four Findings

Plaintiff makes several challenges to the ALJ's step four findings that that Plaintiff could perform past relevant work. Plaintiff argues that the ALJ erred in concluding that he was capable of past work as an office manager. He submits that his past real estate

investment work for a family business was not competitive work or substantial gainful activity under the Act. He also argues that the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") related to Plaintiff's reaching limitations.

Here, the ALJ found that Plaintiff could perform his past relevant work managing investments for Woods & Brooks, Co., a real estate investment trust, which the VE classified as an "office manager" position as Plaintiff actually performed it. (Tr. 26). Plaintiff believes that the job did not qualify as "gainful activity" because his income was not related to his productivity. He testified that Woods & Brooks was an investment trust set up to pay back funds embezzled by his parent, and he maintains that it was not a full-time job; he did not receive a traditional salary; it was not physical work; and his salary was not directly related to productivity. (Tr. 50-52). He testified that he worked about eight to ten hours per week, and that it was not a competitive job. (Tr. 96; 113-114). Plaintiff also testified that he could meet the sitting, standing, reaching, use of hands, and full schedule of competitive light work. (Tr. 33-121). The VE classified the job as an office manager, DOT #219.362-010, light work, SVP-4, with three to six months to learn. (Tr. 53).

"Substantial gainful activity" is defined by the Regulations. Work is "substantial" if it involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). It may be substantial even if the work is done on a part-time basis or one does less, gets paid less, or has less responsibility than when performing prior work. *Id*. Work is "gainful" when done for pay or profit, whether or not profit is realized. § 404.1572(b). Earnings may also determine engagement in substantial gainful activity. *Meyers v. Astrue*, 681 F. Supp. 2d

388, 399 (W.D.N.Y. 2009) (citing 20 C.F.R. § 404.1574). Plaintiff's arguments that his work did not constitute substantial gainful activity were considered and directly refuted by the ALJ within her decision. (Tr. 26). The ALJ cited to Plaintiff's earning records, which show that Plaintiff performed this work for Woods & Brooks on a regular and continuing basis, and that the work was performed for pay and profit. (Tr. 26; 285-87; 297; 301). Plaintiff testified that his pay corresponded to the work that he performed, namely the amount of real estate he sold in a particular year. (Tr. 110). Plaintiff's arguments that the job was not "substantial work activity" because he worked only eight to ten hours per week, and because he believed it was not competitive work, are without merit. First, the Regulations do not require that work be full time to qualify, and second, Plaintiff's own testimony supports the ALJ's finding that the work was substantial. He testified that "there were days [the job] was full time." (Tr. 109). He stated he was "a very active trader with the company's money and grew that money quite a bit." (*Id*.). He could "spend all day on the computer looking at stock reports," and he "managed it like a real job." (*Id*.). Indeed, Plaintiff has provided no evidence to compel a finding that the ALJ's conclusion was unreasonable.

The Court disagrees with Plaintiff's assertion that the ALJ failed to resolve a conflict because the DOT listing provided by the VE states that an administrative clerk must frequently reach, and the VE did not offer information about the reaching requirements of the office manager job. The ALJ's finding here was that Plaintiff could perform his past relevant work *as actually performed*, not as a job title was defined by the DOT. The DOT description is not relevant to determining how Plaintiff actually performed his past work. The step four inquiry requires "separate evaluations of the previous specific job and the

job as it is generally performed." *Glessing v. Comm'r of SSA*, 725 Fed. Appx. 48, 50 (2d Cir. 2018). While the DOT "is used to evaluate jobs as they are generally performed…The Second Circuit has noted many specific jobs differ from those jobs as they are generally performed, and an individual may identify those unique aspects without contradicting the [DOT]." *Filer v. Comm'r Soc. Sec.*, 435 F. Supp. 3d 517, 522-23 (W.D.N.Y. 2020). "Deviations from the [DOT's] description of a job as generally performed when describing a specific previous job do not actually conflict with the [DOT]." *Id*. Further, the regulations do not require explicit findings regarding a plaintiff's past relevant work both as generally performed and as actually performed. *Id*., at 522. "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, […], and the claimant's own testimony, […]." *Mack v. Comm'r of Soc. Sec.*, 17-CV-924, 2019 U.S. Dist. LEXIS 77669, at *13 (W.D.N.Y. May 8, 2019).

Here, Plaintiff's own testimony and description of how he actually performed his Woods & Brooks job is relevant and was relied on. He testified that his work was largely done by computer and telephone, and he did not identify any activities that implicated his overheard reaching limitations. *See Filer*, 435 F. Supp. 3d at 523 ("Contrary to Plaintiff's assertion, the conflict between the DOT and the VE's testimony regarding Plaintiff's PRW as generally performed is immaterial to whether Plaintiff could perform her PRW as actually performed."). Unlike the matter of *Yeomas v. Commission of Social Security*, relied on by Plaintiff, here there was no conflict between the VE's testimony and the DOT job description to reconcile because the ALJ found that Plaintiff remained capable of

17

doing the past work as actually performed. See 18-CV-6537, 2019 U.S. Dist. LEXIS 214958 (W.D.N.Y. Dec. 12, 2019).

Lastly, the Court rejects Plaintiff's argument that his work for Woods & Brooks may have been a "composite" type job that required further accommodations. "When significant variation exists between a claimant's description of her job and the DOT description of the job, it may be the result of a composite job." *Weiser v. Berryhill*, 16-CV-763, 2018 U.S. Dist. LEXIS 195888, at *8 (W.D.N.Y. Nov. 16, 2018). A composite job has "significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT." *Walterich v. Comm'r of Soc. Sec.*, 18-CV-1329, 2020 U.S. Dist. LEXIS 76472, at *10 (W.D.N.Y. Apr. 30, 2020) (*quoting* SSR 82-61, 1982 SSR LEXIS 31, at *2). "If the ALJ finds that a plaintiff's past relevant work is a composite job, then it cannot suffice at step four as work 'as generally performed in the national economy.'" *Noelle v. Comm'r of Soc. Sec.*, 15-CV-1301, 2017 U.S. Dist. LEXIS 34610, at *18 (N.D.N.Y. Feb. 13, 2017). Here, there is no indication that Plaintiff's past work was a combination of two separate DOT job listings and the VE did not conclude, or even suggest, that the office manager role was a composite job. Plaintiff has not cited any specific facts to support this argument and has failed to identify what additional duties he performed that were not included in the DOT listing for office manager. *See Noelle*, 2017 U.S. Dist. LEXIS 34610, at *19 (explaining that plaintiff "appears to confuse a composite job with a job 'as actually performed.'").

Accordingly, Plaintiff has not met his step four burden to show he was unable to perform his past work as actually and as generally performed. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *see also Jasinski v. Barnhart*, 341 F.3d 182,

185 (2d Cir. 2003) ("[I]in the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally."). The Court finds that the ALJ made appropriate findings at step four to conclude that Plaintiff was capable of past relevant work.

In sum, the ALJ's determination that Plaintiff was not under a disability during the relevant period was a proper application of the law and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   June 21, 2022
         Buffalo, New York

                                          */s/ Michael J. Roemer*
                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge